HOUSE et al. v. MOORE et al. (No. 8629.)*

(Court of Civil Appeals of Texas. Galveston. March 13, 1925. Rehearings Denied March 26, 1925.)

1. Executors and administrators 150—Estate, whose representatives permitted lessee to hold over after expiration of term without payment of additional compensation, bound by such action.

Where testator's legal representatives acknowledged receipt and application to estate's uses of full consideration for mining lease for original term, and permitted lessee to hold over, operate, and improve property after expiration of term without prompt payment of additional compensation called for, estate was bound, though extension agreements were without consideration; but lessee was liable for stipulated compensation.

2. Executors and administrators 150—Executors held not authorized to remit any of price agreed to be paid for extension of lease without consideration to estate.

Active executors held authorized by will to bind estate by extending term of mining lease, but not to remit any part of agreed price for such extension.

Appeal from District Court, Fayette County; M. C. Jeffrey, Judge.

Trespass to try title by Mrs. Martha Washington House and others against W. C. Moore and another, in which defendant Moore filed cross-action against codefendant. From judgment for defendants in main action and for named defendant in cross-action, plaintiffs appeal. Affirmed in part, and reversed and rendered in part.

Geo. E. Lenert and C. D. Krause, both of La Grange, for appellants.

Moss & Lowrey, of La Grange, for appellees.

GRAVES, J. Appellants, as surviving wife, heirs at law, and one of them also in the capacity of administrator and legal representative of the estate of J. T. House, deceased, sued appellees W. C. Moore and A. J. Harbers in trespass to try title to 188 acres of land in Fayette county, as well as for damages. Appellee Moore answered, disclaiming the fee to the land, but asserting a leasehold right on 5 acres thereof for the purpose of mining gravel therefrom for a period of time ending on December 21, 1922, under and by virtue of: (1) A written contract made February 21, 1919, between himself and J. T. and C. L. House as independent executors of the will of J. L. House, deceased; (2) a written extension agreement of the prior contract, made on March 27, 1920, between himself and C. L. House alone as such executor after the death of J. T. House, extending the duration of the original agreement for 10 months; (3) a verbal extension to December 21, 1922, of the time granted him under the original contract, entered into between himself and C. L. House, executor as aforesaid, on January 10, 1920, further averring in this connection that on this last-mentioned date he, in good faith, and by reason of the extension, made valuable improvements on the property to the amount of $1,358.20, and continued mining gravel thereon up to the expiration of the extended time on December 21, 1922.

Moore also pleaded over against his codefendant Harbers, charging that on December 6, 1920, he leased the 5 acres involved to the latter for gravel-mining purposes by a written contract, under the terms of which Harbers was to pay him 10 cents per cubic yard for all gravel he mined therefrom, but that he had repudiated and breached the contract, to Moore's damage in about the sum of $2,000, for which amount he sought judgment against Harbers.

Appellants filed their supplemental petition, demurring to and denying the allegations in the answer of appellee Moore, and further alleging that the extension agreement dated March 27, 1920, and the verbal agreement alleged by appellee Moore modifying and extending the original contract of date February 21, 1919, were both void and unenforceable, because of want of authority in the executors under the law and under the will, and that same were lacking in mutuality, were unilateral, gratuitous, without consideration, and were within the statute of frauds; also, that the improvements alleged by appellee Moore were not made in good faith because made with a knowledge of the invalidity of his claims to the use and possession of the land.

In a supplemental reply, appellee Moore demurred to and denied these averments generally, and pleaded limitation.

Appellee Harbers entered his appearance upon appellants' cause of action and was duly cited and served on appellee Moore's cross-action, but answered neither, wholly making default.

The case was tried before the court without a jury, judgment following that appellee W. C. Moore was entitled to the possession of the 5 acres of land described in his answer until the 21st day of December, 1922; that appellants take nothing by virtue of their suit against him and the defendant A. J. Harbers, or either of them; and that the defendant W. C. Moore have and recover of and from the defendant A. J. Harbers the

---

sum of $1,844.70 and all costs incurred by his cross-action against Harbers, adjudging all other costs against appellants.

From that decree this appeal is presented.

What we regard as the controlling facts are few and practically undisputed: Under the will of J. L. House, his two sons, J. T. and C. L., and his sister Mrs. English, were appointed and the three qualified as independent executors and executrix, respectively; the instrument containing this provision touching their powers:

"In the event of the death of either of. my said executors or executrix, either before or after their qualification, or in the event of either declining, refusing or failing or being unable to act as such, then the survivor or survivors, or successors thereof shall act, and all of the acts of my said executors or executrix who may so qualify or act shall be as valid and effective as if all had qualified, and I confer upon my said executors and executrix, or the survivor or successor of them, the power of sale and disposition of my property, or any portion thereof, or to mortgage and incumber the same in any way or manner that may be necessary to pay off any indebtedness I may owe at my death."

On February 21, 1919, J. T. and C. L. House, in their capacity as such executors, made with appellee Moore in writing the original lease on 5 acres of the 188-acre tract referred to in the pleadings, for three years' time ending on February 21, 1922, for a stated consideration of $2,500 payable in five installments, expressly granting to him "no other right in the lands herein described, except the right to mine the gravel on said five acres of land for the period of time hereinabove specified"; the contract, however, containing this provision for a renewal:

"At the end of this lease, to wit, February 21, 1922, the party of the second part shall have the right to renew and extend this lease for one year, to wit, up to February 21, 1923, by the payment in advance in cash the sum of $500.00 to the said C. L. House at Houston, Texas. Should the party of the second part exercise the right of extending this lease for one year as above provided, then after the year for which said lease shall have been extended, shall have expired, then the party of the second part shall have the right to extend said lease for another year by paying to the said C. L. House at Houston, Texas, in advance the sum of $250.00."

Appellants make no contention that this contract did not bind them and the J. L. House estate on account of having been executed by only two of its executors, or on any other ground; but affirm its validity by acknowledging that appellee Moore paid the $2,500 consideration therein called for, and asserting that he had the right thereunder to a renewal and extension as provided in the quoted recitation from it, had he exercised the privilege there given him, which they claim he failed to do.

Bad weather and inability to get material caused a delay of about ten months in beginning mining operations on the land, and on March 27, 1920, the following additional written contract was made between Moore and C. L. House, his coexecutor; J. T. House having died on Jan. 20, 1920:

"Smithville, Tex., March 27, 1920.
"Extension of Contract:

"I, we or either of us, administrators of the J. L. House estate, do agree and bind ourselves to extend the lease or contract made on gravel pit at West Point on February 21, 1919, an additional ten months on the first three years' time given to mine five acres of gravel out of the J. L. House gravel pit located south of the M. K. & T. Railroad track at West Point. This extension being an additional ten months on contract made February 21, 1919, on account of being unable to begin operation in the mining of this gravel due to the bad weather conditions and the impossibility of getting steel and material in order to construct railroad spur in gravel pit during the year 1919.

"It is further agreed and understood that after the two extensions of one year each has expired in above-mentioned contract that an additional two years will be granted to finish mining the five acres of gravel, in case the owner of gravel pit has not been able to remove all of the five acres of gravel an additional sum of $200 payable in advance for each year.

Witness our hand this the 27th day of March, 1920. C. L. House.
"W. C. Moore."

Appellee A. J. Harbers mined and removed from the 5 acres of land during the months of June to August, both inclusive, of 1922, quantities of gravel, which, at 10 cents a cubic yard, amounted in money to $1,844.70, and he deposited this sum in a bank at La Grange to be subject to the orders and judgment of the court in this cause.

It was also shown that a verbal agreement to extend the lease for 10 months was made in January, 1920, between C. L. House and appellee Moore, substantially as pleaded by the latter; but the evidence conclusively established that he paid no additional consideration over what he had been obligated for under the original lease for either the written or verbal agreement to so extend it; the $34.70 interest paid by him on the $2,500 called for in this original lease, and which he claimed to have been an extra consideration for the extension thereof, having been merely to compensate the House estate for his failure to meet the installments making up the $2,500 when due.

Through a number of assignments of error, appellants ably urge here, as they did below, that all rights in the appellees to the use of the 5 acres ceased on February 21, 1922; that from and after that date they were trespassers thereon; that they neither paid nor were obligated for any consideration for any rights therein beyond that time; that both the purported written and verbal ex-

tensions of the original lease were wholly void for the several reasons advanced in appellants' pleadings; that they (appellants) were accordingly entitled to absolute possession of the premises as of date February 21, 1922, and to their damages, inclusive of the fund which appellee Harbers had accumulated from his subsequent mining of gravel therefrom; and that the trial court erred in not so adjudging.

After a very careful consideration of the record and statement of facts, we are unable to agree with them, concluding rather that the judgment entered was right, except in its failure to accord appellants a $500 recovery against appellee Moore, effective as of the date when the three years' original time under the contract of February 21, 1919, expired.

[1] We agree with appellants that neither of the extension agreements can be enforced because not supported by a consideration, but that objection does not apply to the original contract, which, in the provision we have quoted from it, specifically granted appellee Moore the right to an extension upon the payment of the sums therein stipulated. It is true the $500 for the first additional year, recited as being payable in advance, was not so paid; but the privilege to appellee of paying it for the longer tenure was there, and his uncontroverted testimony is that he was neither asked by the executors or executrix to vacate, nor was he ousted from the property on that account, but was both permitted by the two executors to hold over and to make valuable improvements thereon by virtue of that forbearance, and that he continued to mine gravel therefrom until December 21, 1922, notwithstanding the filing of this suit against him by appellants on April 18, 1922.

As indicated in the preceding statement of the facts, the House estate recognized and was bound by this original lease, inclusive of the renewal right in the appellee; all three of the legal representatives of the testator having acknowledged the receipt and application to the uses of the estate of the full consideration for it for the three years' time. If, therefore, these representatives, or such of them as could bind the estate, in recognition of bad weather or other fortuitous circumstances, chose to permit the appellee to hold over, operate, and improve the property under it without the prompt payment of the additional compensation therein called for, no reason occurs to us for holding that the estate—irrespective of whether or not an enforceable renewal thereof had been accomplished—would not be bound by that action. Of course, it would be inequitable to impose liability without requiring of appellee the stipulated compensation therefor, and in that omission we think the trial court erred.

[2] Considering the quoted terms of the will and the undisputed fact that the two executors alone were active in transacting the current business of the estate, we see no valid reason for questioning their authority to bind it in this respect, especially so in view of appellants' stated affirmance of the validity of their original contract in its behalf; they had no authority, however, under that contract, or under the law, to do so by remitting to appellee any part of the price he was thus to pay for the extension of the lease, without benefit or consideration to the estate, as is the effect of his contention and testimony that the ten months' renewal be declared upon, and which, as before pointed out, carried no additional consideration, was "to do away with" the $500 he was bound to pay for any further time under the original lease; indeed, this sort of an extension would have been a violation of their trust on the part of the executors.

In the view we have taken of the case as a whole, it is obviously unnecessary to determine whether or not there was error in the admission of the ex parte deposition of C. L. House.

It follows from these conclusions that so much of the trial court's judgment as decreed that appellants take nothing against appellee W. C. Moore by virtue of their suit against him should be reversed, that this court's judgment in lieu thereof should enter awarding them a recovery of $500 against him, together with 6 per cent. interest per annum thereon from February 21, 1922, until paid; and that in all other respects the judgment entered below should be affirmed; it has been so ordered.

Affirmed in part; reversed and rendered in part.